Thank you, Mr. Corrigan. Also, good morning. Mr. Corrigan has already conceded that the minimum ministry ever required to speak a part of any sort of statute of limitations in regard to violence and circumstances. He has also conceded that if one subsection of the statute requires a minimum ministry of less than a parenthesis, an extension of that would remove him from his category. And, in this case, it's been said that the established unit does not require violence because there is a ministry of much less than a parenthesis. You can call it gross negligence. You can call it comparable negligence. But what you're being told, Mr. Corrigan, has been all parenthesis, which I listed in my 2018 letters, also which are listed in the first-in-progress Statute of the U.S. Constitution, which conclusively establishes that, under this large statute, the defendant can commit manslaughter with the constraint of less than a parenthesis. So, then you walk me through the jury search cases. You know, the, I don't know if it's for everybody, but they have the jury search cases. They, well, there's not, I mean, they do have a bunch of cases, but that's the first one I heard. But, then, the comparable negligence instruction is given when the jury then chooses between sex offender, murderer, and homicide. And that's, there's a whole bunch of these unique instructions. I don't have any data to show that, as far as how serious this is, any defendant should commit manslaughter in a sense, even to the level of a parenthesis, unless you see that there are any parenthesis provisions. Well, I disagree with that. And there are also sorts of common-sense arguments. The defendant has given you some cases where some substitutions were overcharged. But, as to one of the cases in Florida, we have examples where manslaughter convictions are upheld with the lesser-than-just state of common-sense negligence. And the same jury instruction that the government decides, as far as what is being used to convict these people. And, of course, yes, that there's an issue there, too. The government's suggestion that a jury instruction be subsequently overcharged because it didn't quite meet the political and negligence indicators we should consider is that we assume that those are the data. But, no contest, in 2003, before this jury instruction, the government was complaining about most of the fines. So, it's the one that's worse. If these convictions are now overlooked, then this jury instruction may seem to be a step in the direction that you would be looking for. But, I think the critical thing is that you don't have these liabilities to just upheld in Florida where defendants have been manslaughtered by doing things like murdering an SGC outside of the United States in 2018, or a shopper driver, or what else he's called, stranger cars. He's called the Freedom Forces to take a car accident. And the owner or operator of the vehicle that he's trying to find and then subsequently convicted of manslaughter is a civil negligence standard, not a recklessness standard. And, and that goes to that part of the case where somebody is committing misdemeanor or a criminal negligence. But, it's following, or chasing after a murderer, not to report an attack or an assault, and the murderer is convicted of negligence, manslaughter under a procedure that's just standard, rather than a recklessness standard. So, the fact of the matter is that a lot of cases in Florida spanning a hundred years recognize that the judge can't convict manslaughter under a code of mandates that are not seen to be less than recklessness. So, the fact that Florida has a code of negligence doesn't really permit any argument that there's any chance of manslaughter under a code of mandates, a code of mandates that incorporate a recklessness standard. If you look at both the statute and the jury instruction, in the judge's judgment, Hale's Fifth Circuit has, in, in our state press, said that, therefore, these citizens of Florida were personally convicted of manslaughter under a standard of less than negligence. Now, what the government and the state are using this court to do is to get it to a ruling that is completely in-laws with Hale's Fifth Circuit, under the state statute, on behalf of Hale's Fifth Circuit, which has a 16-mile-an-inch, 16-foot-wide court. And the government is not supporting this type of procedure. So, if you look at this court's process, I don't know why we're seeing that kind of judgment. Thank you. May it please the court, the defendant is being interceded. Your Honor, the dissertation of this crime is a case in which the name of the father of your son, Michael Hale, has been on scene. When you are interceding on the basis of this crime, you are interceding with the intention of being a crime of violence. It meets an evolutionary condition. So, there are two changes. The first one is that you call him on the offense. I don't know how well she interceded on this offense. So, you can't say, no, it's wrong. It's true. It meets the law, so it's not a crime. And the second thing is that there's a lot of intent and a lot of violence in this case. So, there's your answer to your question. The answer is yes, it's true. Thank you. Your Honor, in the murder charge materials, your evidence does not provide an answer yet. The evidence requires a clarifying answer of a court-ruled intercede. The interceding or serial murder intercedes was a hate and non-verbal intercede in which you are not discerning whether or not a court-ruled intercede is or is not discerning. I'm just wondering why. Is there a relatability issue in this interceding? So, there are two ways to intercede. There's not an interceding situation. Mr. Kennedy, I'm sorry. It is brief. Can you comment on the fact that the interceding will be referenced and not published? This interceding will be generally held when it is published at an interview. What I mean is that the attorneys are specific about the case to our attention and we do our part. And so, if this would be much your response, then you also agree that the interceding is to create a circuit split between both parties. So, you don't want us looking at the interceding issues as a circuit in their publishing. Yes, Your Honor. In my argument, the interceding is a serious decision and Kennedy is trying to have a serious case as to whether or not the court is interpreting the interceder's interceding. So, you're interceding for him? I am interceding for him. So, I understand that from the standpoint of the publisher to decide whether or not he shows a good example here. And, I don't know if this is safe, but as an interviewee, this is supposed to be a good jury to decide what's on the side. And, it's not me, I'm representing the jury and the judge and the interviewer and the interviewee and I'm representing the jury. So, you only have two choices, Your Honor. You only have two choices. The second three are where we must be in terms of the interceder, the case, the interceding, and the jury's decision. And, that is where we must be in terms of the interceder. Fine. Thank you, Your Honor. We are at a moment in which this is not an interceding season in which the interceder has a longer sentence. And, I don't know how many jurors may be able to answer these questions. So, I'm going to ask a very specific series of jurors who are not here in the audience to tell me how they have told me that I should leave this law here. Your Honor, the question I'm asking is a very specific one. And, I'm going to ask  And, I'm going to ask a very specific one. What McClary did was he responded to me by describing the argument that the case had come to the jury's decision with an error. The jury's decision was that the intercession to the jury was a very serious error. And, what McClary did was he intended to discredit the jury in his argument. He didn't say what the limit level in that jury required for this law to be met. And, certainly, in this case, it's a lot more than he needed to say. And, he did not discredit the jury in his argument that the jury was a very serious error. And, there's a lot of things that he needs to say in this case. Your Honor. I didn't understand your argument specifically, but I'm going to say it makes sense. In the future, Your Honor, I understand that the court looks to Florida Law and all of the papers before the memory decision and it claims that I've published your indiscretion. I don't think that's an indiscretion that we're sustaining under any condition that I've published any indiscretion. I just think that this is longer than any indiscretion covering of this. And, the people who need this indiscretion is necessary. Your Honor. I just want to say that it's not necessarily an indiscretion that's longer than we're talking about here in the future. In the future, I'm not even going to say what will be the foreign cases of every day as I should just say it's a requirement of receiving the ruling in order for the law to be in order to be law and order in order to be in order. We're just going to continue to say that your jury is indiscreet in terms of the language that's required about it and various distributions. And, I understand that the judiciary requires indiscretion and indiscretion but I understand that all the jury looks to indiscretion to mean the injury to the indigent in the accuracy to the indigent to cause the death of the first inmate by the injection where the deceased had a brain heart and so it's not a jury requirement or any substantive effort that requires a ruling at all. One couple of other questions here and there's one other that I think is really interesting and also in the charge that our agency has put behind this issue is that there seems to be some kind of absence from the case here that is based on
judges: Tallman, Clifton, Ikuta